UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER ALLEN SMITH,

          Petitioner,

    vs.

SCOTT FRAUENHEIM,

          Respondent.

No.  2:15-cv-0151-MCE-EFB P

FINDINGS AND RECOMMENDATIONS

       Petitioner is a state prisoner proceeding through counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a judgment of conviction entered against him on January 23, 2012, in the Yolo County Superior Court on a charge of second degree murder with various sentence enhancements.  He seeks federal habeas relief on the following grounds: (1) his prosecution by way of a complaint and information violated his Fifth Amendment right to a grand jury indictment; (2) the prosecutor violated his right to due process by introducing an excessive amount of evidence related to racist websites and by introducing evidence in his case-in-chief regarding petitioner's possession of numerous rifles and shotguns; (3) his trial counsel rendered ineffective assistance; and (4) the trial court violated his right to due process in excluding evidence of a prior inconsistent statement made by the victim's daughter.  Upon careful consideration of the record and the applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

1

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant shot and killed Gidd Robinson. A grand jury twice declined to indict him for Robinson's murder, but did indict him on firearm possession charges. Thereafter, the People proceeded against him by way of criminal complaint and preliminary hearing. The trial court found probable cause to hold defendant to answer for Robinson's murder, and a jury found defendant not guilty of first degree murder but guilty of the lesser offense of second degree murder. (Pen.Code, § 187, subd. (a).)[1] The jury also found true allegations the killing was perpetrated by means of shooting a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict great bodily injury (§ 190, subd. (d)); defendant personally used a firearm in the commission of the murder (§ 12022.5, subd. (a)); and defendant personally and intentionally discharged a firearm and proximately caused great bodily injury to another person in the commission of the murder (§ 12022.53, subd. (d)).[2] Defendant was sentenced to an aggregate term of 45 years to life in state prison, consisting of 20 years to life for Robinson's murder (§ 190, subd. (d)), plus a consecutive 25 years to life for personally and intentionally discharging a firearm and proximately causing great bodily injury to Robinson in the commission of the murder. Defendant's sentence for using a firearm was stayed pursuant to section 654.
>
> Defendant appeals, contending the trial court erred in denying his motion to set aside the information. According to defendant, his prosecution for Robinson's murder is barred by article I, section 14.1 of the California Constitution and section 1387 "because [a] grand jury had twice failed to indict him on the murder charge, while indicting him on firearm possession charges." Alternatively, he contends the trial court abused its discretion "in allowing the prosecutor to introduce an excessive amount of evidence related to racist websites" and excluding evidence Robinson's daughter told police Robinson said "bad words" to defendant prior to the shooting. Finally, defendant asserts the prosecutor prejudicially erred "by introducing evidence regarding [defendant's] possession of numerous rifles and shotguns" in violation of the trial court's in limine ruling.

[1]  Further undesignated statutory references are to the Penal Code.

[2]  Following defendant's conviction, the Legislature repealed sections 12022.5 and 12022.53. New versions took effect on January 1, 2012. (Stats.2010, ch. 711, §§ 5, 10.) The new versions continue those sections without change, except that, as relevant here, section 12022.53, subdivision (d) was revised to correct a cross-reference to former section 12034, subdivisions (c) and (d).

We shall conclude defendant's prosecution for Robinson's murder is not barred under either article I, section 14.1 of the California Constitution or section 1387, and thus, the trial court did not err in declining to set aside the information on that basis. We shall further conclude the trial court did not abuse its discretion in admitting evidence a computer seized from defendant's home was used to access racist Web sites or in excluding evidence Robinson's daughter told police Robinson said "bad words" to defendant prior to the shooting. Finally, we shall conclude the prosecutor erred in eliciting evidence defendant possessed numerous rifles and shotguns, but defendant forfeited the error by failing to timely object below, and even if the issue had been preserved for review, defendant was not prejudiced thereby. Accordingly, we shall affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.**

**The Prosecution**

On the afternoon in question, defendant drove to his father's home on Jasmine Avenue in West Sacramento to pick up a couch to bring to the dump. He was accompanied by his seven-year-old son. When they arrived, defendant asked his father to pay him $20 to take the couch. Defendant's father refused, telling defendant he would wait for a "free trash" day.

Defendant and his son returned to defendant's truck, pulled out of defendant's father's driveway and stopped, blocking Jonathan Pasquale's driveway. Pasquale assumed defendant was waiting for someone because he kept looking over his shoulder. Pasquale motioned for defendant to move, and defendant did so. Meanwhile, Robinson, who lived down the street, was walking along Jasmine Avenue with his three young daughters. Robinson threw up his hands, and defendant responded by flipping him off. Defendant then drove to the end of the block, turned left onto Riverbank Road, and stopped along the levee.

Robinson told his daughters to wait while he walked toward defendant's truck. According to defendant's son, Robinson yelled some "bad words" and was hiding a black phone or gun under his shirt. When Robinson was a few feet from the truck, defendant pointed a gun out the window and shot him in the upper arm and chest area. Robinson doubled over, clutched himself, and stumbled back toward his house. According to defendant's son, Robinson put something in his shirt after he was shot.

Gloria Blanco, who lived at the corner of Riverbank Road and Jasmine Avenue, saw Robinson approach defendant's truck. Robinson was not yelling or using profanity. Fifteen or twenty seconds later, she heard a gunshot, and when she looked up, she saw the truck drive off. She did not see a gun in Robinson's hand or see him throw a gun. Blanco's husband Jesus also saw Robinson approach defendant's truck and heard the gunshot. Jesus did not see

3

anything in Robinson's hands or see him throw anything. Two other neighbors saw Robinson moments after he was shot, and neither saw anything in Robinson's hands.

Robinson collapsed in front of his in-laws' house down the street from where he was shot. Gloria Blanco called 911, and emergency responders arrived shortly thereafter. Robinson died on the way to the hospital.

A cell phone was found in the pocket of Robinson's pants. Officers searched the area around Jasmine Avenue and Riverbank Road but did not find a gun.

Defendant fled the scene. He drove to the Elkhorn boat ramp near the Sacramento River, telling his son he had to "[h]urry . . . so the cops . . . won't get me." He placed the gun he used to kill Robinson into a backpack and had his son carry the backpack down to the river. Once there, defendant removed the gun from the backpack and threw it in the river. Defendant told his son not to tell anyone what defendant had done.

Shortly after leaving the boat ramp, defendant was stopped by a deputy sheriff and placed under arrest. Defendant told the deputy, "[O]h my God, what have I done. I killed that guy. He pointed a gun at me and my son."

Following his arrest, defendant was interviewed by Detective Eugene Semeryuk at the West Sacramento Police Department. A video tape of the interview was played for the jury. Defendant told Semeryuk he went to his father's house on the day in question to pick up a couch to take to the dump. When he arrived, his father was taking a nap. He returned to his truck, intending to pull it around and re-park it closer to his father's gate so he did not have to walk as far when he got the couch. As he drove down Jasmine Avenue, he saw Robinson, who gave him a dirty look and threw up his hands. Defendant responded by flipping him off. When defendant saw Robinson walking toward him, he pulled around the corner, hoping Robinson would continue down Jasmine Avenue, and defendant could return to his father's house. As defendant waited, he grabbed his gun and loaded it with a speed loader he kept in the glove box. When he saw Robinson run around the corner, he pointed his gun at Robinson and said, "Hey, just back off." Robinson asked, "What are you going to do?" Robinson also pulled up his shirt, revealing a gun in his waistband. When Robinson reached down toward the gun, defendant shot him. There was no other exchange of words. Thereafter, defendant "freaked out," drove to the river, and disposed of the gun. Defendant did not know what kind of gun Robinson had because he only saw the gun's handle.

A computer seized from defendant's home was examined by a forensic expert, who found the computer was used hundreds of times between 2007 and November 2009 by someone associated with defendant's user account and e-mail address to visit racist Web sites and view news reports of African–Americans committing

4

crimes against Whites.  Defendant is White, and Robinson was African–American.

**B.**

**The Defense**

Defendant testified in his own defense.  He explained that on the day in question, he and his son went to his father's house to pick up a couch in the backyard.  When they arrived, defendant's father was in bed.  Defendant asked his father for $10 or $20 to cover a portion of the dump fee.  His father told him not right now, maybe later, stating he just wanted to sleep.  Defendant and his son went outside, and defendant attempted to re-park his truck.  Eventually, defendant decided to pull all the way out and down the street a ways before attempting to back into the driveway.  When he was about 60 feet down the street, he saw Robinson walking with some children.  Robinson gave him a "really cold hard look" and threw his arms up in the air.  Defendant responded by giving Robinson a "dismissive head wave," and Robinson flipped defendant off.  Defendant returned the gesture, flipping Robinson off.  At that point, Robinson started walking toward defendant's truck with a "menacing" smile on his face.  Defendant drove forward about 10 feet, and Robinson stopped.  When defendant stopped, Robinson again began walking toward the truck.  At that point, defendant drove around the corner and parked, hoping Robinson would think defendant left.  Defendant intended to wait there for three or four minutes before returning to his father's house.  As a precaution, he reached for his gun, a .357–caliber revolver, and loaded it.  After a couple of minutes, defendant saw Robinson running around the corner toward the truck.  Defendant grabbed the gun, pointed it at Robinson, who was a little more than arm's distance away, and told Robinson to stop.  Robinson stood there for a moment, and defendant said, "[P]lease just go away, please don't do this.  Just go away."  Robinson turned sideways and asked, "[W]hat the fuck are you going to do with that?"  Robinson also lifted up his shirt, revealing the handle of a handgun.  Defendant could not tell whether it was a revolver or an automatic weapon.  When Robinson "moved his hand up under his shirt, back to where he showed [defendant] the firearm," defendant shot him.  Defendant was in fear of his and his son's lives when he pulled the trigger.  Thereafter, defendant panicked, drove to the river, and disposed of the gun.  Defendant had never seen Robinson prior to this incident.

Defendant acknowledged viewing racist Web sites on the computer seized from his home, explaining he did so in conjunction with his cultural anthropology class and two history courses.  He did not share the views expressed in those Web sites.  He had African–American friends.  Robinson's color had nothing to do with the shooting.

Defendant's former coworker, who is African–American, testified he knew defendant "pretty well."  They went shooting together, and he felt defendant was honest and without racial bias.

5

Defendant's stepfather, who has known defendant since defendant was six years old, testified defendant had African–American friends and was not prejudiced.

Clark Pease testified that a couple of years before the incident in question, Robinson coldcocked Pease in the face.  According to Pease, Robinson had a reputation for being a "thug."

*People v. Smith*, No. C070259, 2013 WL 5934315, at *1-4 (Cal. Ct. App. Nov. 6, 2013).

## II.  Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court

6

1   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall*

2   *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

3   (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

4   widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

5   be accepted as correct.  *Id.*  Further, where courts of appeals have diverged in their treatment of

6   an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

7   *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

8        A state court decision is "contrary to" clearly established federal law if it applies a rule

9   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

10   precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

11   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

12   writ if the state court identifies the correct governing legal principle from the Supreme Court's

13   decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] *Lockyer v.*

14   *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

15   (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

16   court concludes in its independent judgment that the relevant state-court decision applied clearly

17   established federal law erroneously or incorrectly.  Rather, that application must also be

18   unreasonable."  *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

19   (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

20   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

21   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

22   'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v.*

23   *Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

24   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

25   must show that the state court's ruling on the claim being presented in federal court was so

26   ───────────────

27        [3]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
     presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

28   384 F.3d 628, 638 (9th Cir. 2004)).

1   lacking in justification that there was an error well understood and comprehended in existing law

2   beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

3        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

4   court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

5   527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

6   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

7   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

8   de novo the constitutional issues raised.").

9        The court looks to the last reasoned state court decision as the basis for the state court

10  judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If

11  the last reasoned state court decision adopts or substantially incorporates the reasoning from a

12  previous state court decision, this court may consider both decisions to ascertain the reasoning of

13  the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When

14  a federal claim has been presented to a state court and the state court has denied relief, it may be

15  presumed that the state court adjudicated the claim on the merits in the absence of any indication

16  or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99.  This presumption

17  may be overcome by a showing "there is reason to think some other explanation for the state

18  court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

19  Similarly, when a state court decision on a petitioner's claims rejects some claims but does not

20  expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

21  the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133

22  S.Ct. 1088, 1091 (2013).

23       Where the state court reaches a decision on the merits but provides no reasoning to

24  support its conclusion, a federal habeas court independently reviews the record to determine

25  whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v.*

26  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

27  review of the constitutional issue, but rather, the only method by which we can determine whether

28  a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.  Where no

1    reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

2    reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

3           A summary denial is presumed to be a denial on the merits of the petitioner's claims.

4    *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

5    just what the state court did when it issued a summary denial, the federal court must review the

6    state court record to determine whether there was any "reasonable basis for the state court to deny

7    relief."  *Richter*, 562 U.S. at 98.  This court "must determine what arguments or theories ... could

8    have supported, the state court's decision; and then it must ask whether it is possible fairminded

9    jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

10   decision of [the Supreme] Court."  *Id.* at 102.  The petitioner bears "the burden to demonstrate

11   that 'there was no reasonable basis for the state court to deny relief.'"  *Walker v. Martel*, 709 F.3d

12   925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

13          When it is clear, however, that a state court has not reached the merits of a petitioner's

14   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

15   habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

16   F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

17   **III.  Petitioner's Claims**

18          **A.  Right to a Grand Jury Indictment**

19          In his first ground for relief, petitioner claims that his Fifth Amendment right to a grand

20   jury indictment was violated when he was prosecuted for murder by complaint and information

21   after the Yolo County Grand Jury twice failed to indict him for that crime.  ECF No. 1 at 20.[4]  He

22   argues that the error was "structural, requiring no assessment of the trial record."  *Id.* at 5.

23          Petitioner filed a pre-trial motion to set aside the information pursuant to Cal. Penal Code

24   § 995, in which he claimed, among other things, that the filing of a complaint and information

25   charging him with murder following two failures by the Yolo County Grand Jury to indict him for

26   murder violated his Fifth Amendment right to a grand jury indictment.  Resp't's Lodg. Doc. 16 at

27   _____

28          [4]  Page number citations such as this one are to the page numbers reflected on the court's
     CM/ECF system and not to page numbers assigned by the parties.

347-49, 383-85.  Petitioner noted that most provisions of the Bill of Rights had been applied to the states under the Fourteenth Amendment and that "the Fifth Amendment Grand Jury right should rightfully be incorporated to the states" as well.  *Id.* at 385.  After hearing oral argument, the trial court denied petitioner's motion to set aside the information.  *Id.* at 388.

Petitioner then filed a petition for writ of mandate in the California Court of Appeal, seeking a stay of the trial and an immediate review of the trial court's decision denying his § 995 motion.  Resp't's Lodg. Doc. 1.  After initially granting a stay of the trial and requesting written opposition from respondent, the Court of Appeal denied the petition for writ of mandate.  Resp't's Lodg. Docs. 5, 6, 9.  Petitioner then filed a petition for review and request for immediate stay of proceedings in the California Supreme Court.  Resp't's Lodg. Doc. 10.  The California Supreme Court summarily denied review.  Resp't's Lodg. Doc. 11.  Petitioner next filed a petition for writ of certiorari in the United States Supreme Court, arguing that the right to a grand jury guaranteed by the Fifth Amendment must be incorporated to the states under the Fourteenth Amendment. Resp't's Lodg. Doc. 12.  That petition was also summarily denied.  Resp't's Lodg. Doc. 14.

After petitioner was convicted by a jury of second degree murder he filed an appeal claiming, among other things, that the trial court violated a state statute and the California constitution when it denied his motion to set aside the information.  The California Court of Appeal described the background to petitioner's claim, as follows:

> **Defendant's Prosecution for Robinson's Murder Is Not Barred by Either Article I, Section 14.1 of the California Constitution or Section 1387**
>
> Defendant contends "[t]he trial court prejudicially erred when it denied [his] motion to set aside the information." (§ 995.) According to defendant, his prosecution is barred by article I, section 14.1 of the California Constitution and section 1387 because a grand jury twice failed to indict him for Robinson's murder, while indicting him on related firearm possession charges. He is mistaken.
>
> On November 5, 2009, the Yolo County District Attorney filed a criminal complaint charging defendant with Robinson's murder.[5]

---

[5]  The People ask us to take judicial notice of our files in *Smith v. Superior Court of Yolo County*, case No. C068271.  The request for judicial notice is granted. (Evid.Code, §§ 459, subd. (a), 452, subd. (d).)

Defendant was arraigned on November 12, 2009.   Instead of proceeding to a preliminary hearing, however, the district attorney presented the case to a grand jury, and the original complaint was dismissed.   The grand jury returned an indictment, charging defendant with five felony counts of unlawfully possessing assault weapons and one misdemeanor count of destroying or concealing evidence.   The grand jury declined to indict defendant for Robinson's murder.   Defendant was arraigned on March 3, 2010, and pled not guilty to the charges in the indictment.

On May 10, 2010, the district attorney presented additional evidence to the grand jury, but the grand jury again declined to indict defendant for Robinson's murder.

On October 28, 2010, the district attorney filed a second criminal complaint, charging defendant with Robinson's murder, and alleging three firearm enhancements.   Defendant was arraigned on October 29, 2010, and a preliminary hearing was set for November 12, 2010.

On November 12, 2010, defendant filed a motion to dismiss the complaint on the ground his prosecution for Robinson's murder was barred under article I, section 14.1 of the California Constitution, which provides: "If a felony is prosecuted by indictment, there shall be no postindictment preliminary hearing."   The trial court denied the motion, finding there had been no indictment on the murder charge, and therefore, article I, section 14.1 of the California Constitution did not apply.

Following the preliminary hearing, the trial court found probable cause to hold defendant to answer to the murder charge.   On March 1, 2011, the district attorney filed an information, charging defendant with Robinson's murder and the three firearm enhancements alleged in the complaint.

On April 1, 2011, defendant filed a motion to set aside the information, again arguing the prosecution was barred from charging him with Robinson's murder under article I, section 14.1 of the California Constitution as well as section 1387.   The trial court denied the motion.   On May 27, 2011, defendant filed a petition for writ of mandate in this court (*Smith v. Superior Court of Yolo County*, case No. C068271), and we issued a stay and requested an informal response from the People.   On July 21, 2011, we summarily denied the petition and lifted the previously imposed stay.   Our Supreme Court likewise denied defendant's petition for review and application for stay, and the United States Supreme Court denied his petition for a writ of certiorari.

*Smith*, 2013 WL 5934315, at *4-6.

The California Court of Appeal rejected petitioner's arguments on state law grounds, reasoning as follows:

/////

On appeal, defendant claims that article I, section 14.1 of the California Constitution "does not allow a preliminary hearing on unindicted charges for an indicted defendant." More specifically, he claims that because he "was indicted on firearm possession and destruction of evidence charges," the prosecution was precluded from proceeding against him on the murder charge by way of criminal complaint and preliminary hearing.

As set forth above, article I, section 14.1 of the California Constitution provides: "*If a felony is prosecuted by indictment*, there shall be no postindictment preliminary hearing." (Italics added.) "An indictment is an accusation in writing, *presented by the grand jury* to a competent court, charging a person with a public offense." (§ 889, italics added.) Where, as here, a grand jury fails to return an indictment on a felony charge sought by a prosecutor, it would seem the felony is not prosecuted by indictment, and the prohibition set forth in article I, section 14.1 does not apply. Defendant disagrees. He claims that his prosecution for Robinson's murder is barred even though the jury failed to return an indictment on that charge because the grand jury returned an indictment on the related firearm possession charges. His claim is not well taken.

First, the drafter's use of the article "a" (as opposed to "any") is consistent with the People's position that "the prohibition on post indictment preliminary hearings applies only when the same felony is contained in an indictment, not when a defendant is indicted on some other felony, even a related felony." Moreover, article I, section 14.1 of the California Constitution was enacted as part of Proposition 115, the Crime Victims Justice Reform Act. (*Bowens v. Superior Court* (1991) 1 Cal.4th 36, 50 (*Bowens*).) The "manifest intent" of the voters in enacting article I, section 14.1 was to abrogate our Supreme Court's decision in *Hawkins v. Superior Court* (1978) 22 Cal.3d 584, 586, which held that defendants who had been indicted had a right to a preliminary hearing before a magistrate. (*Bowens, supra*, 1 Cal.4th at pp. 47–48.)[6] Stated another way, article I, section 14.1 was enacted to limit a defendant's constitutional right of equal protection (Cal. Const., art. I, § 7) as it relates to the constitutionally mandated indictment process (*Bowens, supra*, 1 Cal.4th at p. 45), not the People's ability

_____

[6]   "In *Hawkins*, [our Supreme Court] concluded there is a 'considerable disparity in the procedural rights afforded defendants charged by the prosecutor by means of an information and defendants charged by the grand jury in an indictment. [Fn. omitted.]' [Citation.] [The court] noted that although the Penal Code provided those defendants ultimately charged by information with a preliminary hearing presided over by '"a neutral and legally knowledgeable magistrate, representation by retained or appointed counsel, the confrontation and cross-examination of hostile witnesses, and the opportunity to personally appear and affirmatively present exculpatory evidence [citations],"' the code failed to provide a similar '"impressive array of procedural rights"' to defendants charged by indictment. [Citation.] [The court] held that, 'an accused is denied the equal protection of the laws guaranteed by article I, section 7, of the California Constitution when prosecution is by indictment and he [or she] is deprived of a preliminary hearing and the concomitant rights which attach when prosecution is by information.' [Citation.]" (*Bowens, supra*, 1 Cal.4th at p. 40, fn. omitted.)

to prosecute felonies. Under the interpretation urged by defendant, a prosecutor would not be precluded under article I, section 14.1 of the California Constitution from proceeding by way of complaint and preliminary hearing where a grand jury declined to return an indictment on any of a number of felony charges sought by a prosecutor, but would be precluded from doing so where a grand jury returned an indictment on some but not all of those same charges. Such an interpretation is not only inconsistent with the plain language of article I, section 14.1 of the California Constitution and the voters' intent in enacting it, it defies common sense. Article I, section 14.1 of the California Constitution does not apply here, and the trial court did not err in denying defendant's motion to set aside the information on this basis.

Defendant also argues his prosecution for Robinson's murder is barred by section 1387, which provides in pertinent part: "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony . . . and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995 . . . ." In other words, "two dismissals pursuant to section 1385, 859b, 861, 871 or 995, bar retrial on felony charges except in limited circumstances." (*People v. Hatch* (2000) 22 Cal.4th 260, 270.)[7]

Defendant acknowledges the murder prosecution was never dismissed pursuant to any of the statutes enumerated in section 1387, but asserts the grand jury's "failure to indict is tantamount to a termination of the action by a magistrate under section 1387." In support of his assertion, he relies on cases likening a grand jury's function in determining whether to return an indictment under section 939.8 to that of a magistrate deciding whether to bind a defendant over to the superior court on a criminal complaint under section 871. (*See, e.g., Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1027; *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 140.) Unlike section 871, however, section 939.8 is not among the statutes listed in section 1327. The canon of statutory construction that lists are ordinarily considered exclusive, expressio unius est exclusio alterius, supports the conclusion that a grand jury's failure to indict does not amount to a dismissal for purposes of section 1327's two-dismissal rule. (2A Singer & Singer, *Sutherland Statutory Construction* (7th ed.2007) § 47.23, pp. 398–421.) Moreover, while a magistrate's determination that there is not

---

[7]  "Whether a third or subsequent prosecution of a felony is barred by an earlier termination depends on the nature and circumstances of the previous dismissals. [Section] 1387 expressly refers to an action terminated by a dismissal for want of prosecution, speedy trial, or in furtherance of justice ([§§ ] 1381 et seq., 1385), a dismissal for failure to provide a speedy or continuous preliminary examination ( [§§ ] 859b, 861), a dismissal for lack of proof that a public offense has been committed ( [§] 871), and an order setting aside an indictment or information ([§] 995). Where there are successive dismissals on any of these grounds, or combinations of them, the order terminating the second action operates to bar any third or subsequent prosecution on the same charge unless one of the statutory exceptions applies." (5 Witkin & Epstein, *Cal.Criminal Law* (4th ed. 2012) *Criminal Trial*, § 488, pp. 754–755.)

1
2
3
4
5
6
7

> sufficient cause to believe a defendant is guilty of a public offense and a grand jury's determination that there is not sufficient evidence to warrant a conviction by a trial by jury may be similar in some respects, they are dissimilar in one key respect: unlike a magistrate, a grand jury is not required to dismiss or otherwise exonerate the targets of their investigation unless specifically requested to do so. (§ 939.91; *see also Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117, 1133.)  There is no evidence in the record before us that such a request was ever made much less granted.  For all the foregoing reasons, we conclude section 1387 does not apply here, and the trial court did not err in declining to set aside the information on this basis.

8   *Id.* at **5-6.  After the California Court of Appeal affirmed his judgment of conviction, petitioner

9   filed a petition for review, claiming that the trial court violated state law when it denied his

10  motion to set aside the information.  Resp't's Lodg. Doc. 32.  The petition for review was

11  summarily denied.  Resp't's Lodg. Doc. 33.

12      Petitioner subsequently filed a petition for writ of habeas corpus in the California Supreme

13  Court, in which he re-asserted his claim that he had a federal constitutional right under the Fifth

14  Amendment to a grand jury indictment.  Resp't's Lodg. Doc. 34.  That petition was also

15  summarily denied.  Resp't's Lodg. Doc. 35.

16      "[I]ndictment by grand jury is not part of the due process of law guaranteed to state

17  criminal defendants by the Fourteenth Amendment."  *Branzburg v. Hayes*, 408 U.S. 665, 688

18  n.25 (1972).  Thus, there is no due process right to a grand jury indictment before criminal

19  prosecution in state court.  *Hurtado v. California*, 110 U.S. 516, 534-35 (1884).  "Ever since

20  [*Hurtado*], this Court has consistently held that there is no federal constitutional impediment to

21  dispensing entirely with the grand jury in state prosecutions."  *Beck v. Washington*, 369 U.S. 541,

22  545 (1962).  *See also Bazzo v. Soto*, NO. EDCV 12-2112-CJC (DTB), 2015 WL 3561733, *31

23  (C.D. Cal. Mar. 3, 2015) ("[T]he right to presentation of a criminal case to a grand jury in federal

24  criminal proceedings under the Fifth Amendment has not been extended to the states via the

25  Fourteenth Amendment."), *adopted by* 2015 WL 3561735 (C.D. Cal. June 2, 2015).  Similarly,

26  the U.S. Court of Appeals for the Ninth Circuit has denied habeas relief on a claim that

27  petitioner's Sixth Amendment confrontation rights were violated at a preliminary hearing on the

28  /////

14

1  grounds that there is no federal constitutional right to a preliminary hearing.  *Peterson v.*

2  *California*, 604 F.3d 1166, 1169-70 (9th Cir. 2010).

3      In his claim before this court, petitioner alleges that the prosecutor's actions in proceeding

4  against him by way of a complaint and information, after the Yolo County Grand Jury twice

5  declined to indict him for murder, "denied petitioner the fundamental constitutional right to grand

6  jury indictment under the Fifth Amendment."  ECF No. 1 at 20.  Petitioner acknowledges that the

7  Fifth Amendment right to a grand jury indictment has not been applied to the states.  *Id.* at 21-22.

8  However, he argues that substantial changes in California charging procedures require a "re-

9  assessment of the *Hurtado* analysis."  *Id.* at 24.  In sum, petitioner claims that "the Fifth

10  Amendment Grand Jury right should be incorporated to the states."  *Id.* at 25.

11      As set forth above, in order to obtain habeas relief petitioner must demonstrate that the

12  decision of the California Supreme Court denying his Fifth Amendment claim is contrary to or an

13  unreasonable application of United States Supreme Court authority.  28 U.S.C. § 2254(d).

14  Petitioner has failed to make this showing; indeed, the decision of the California Supreme Court

15  is entirely consistent with existing United States Supreme Court authority.  Accordingly, under

16  AEDPA, petitioner is not entitled to relief on his claim that his prosecution in state court by way

17  of complaint and information violated his Fifth Amendment right to a grand jury indictment.

18      **B.  Erroneous Admission of Evidence**

19      In his next ground for relief, petitioner claims that the trial court violated his federal right

20  to due process in allowing the prosecutor to introduce an "excessive amount of evidence related

21  to racist websites."  He also claims that his trial and appellate counsel rendered ineffective

22  assistance in failing to raise this federal claim at trial and on appeal.  ECF No. 1 at 25-26.

23  Petitioner argues that in the context of this case, where the motive for the shooting remains a

24  matter of "controversy and speculation," the introduction of evidence that petitioner's computer

25  was frequently used to access racist websites rendered his trial fundamentally unfair.  ECF No. 16

26  at 3.  He contends that evidence of his computer history "lacks relevance and should not have

27  been admitted."  *Id.*

28  /////

15

On direct appeal, petitioner claimed that the trial court abused its discretion in allowing the prosecution to introduce "excessive" evidence that petitioner's computer was used to access racist websites, arguing that the evidence was substantially more prejudicial than probative.  The California Court of Appeal denied this claim, reasoning as follows:

**The Trial Court Did Not Abuse Its Discretion in Admitting Evidence Defendant Viewed Racist Web Sites**

Defendant next claims the trial court abused its discretion in allowing the People to introduce "an excessive, extraordinary amount of highly inflammatory racist website-related evidence." Defendant concedes evidence of racial bias is relevant to show motive, but argues "the highly prejudicial nature of the evidence nevertheless called for its total exclusion."  Even assuming the evidence was not unduly prejudicial, defendant claims "the amount thereof should have been limited."  As we shall explain, defendant forfeited his argument that the evidence was excessive by failing to object to its admission on that ground below, and in any event, the challenged evidence was properly admitted.

Prior to trial, defendant moved in limine to exclude all evidence showing the computer seized from his home was used to "[visit] websites that included terms such as 'nigger' and 'White Supremacist' and images of Nazis and articles detailing assaults by black assailants on white victims" on the grounds such evidence would constitute improper character evidence under Evidence Code section 1101, subdivision (a), and would be more prejudicial than probative under Evidence Code section 352.  The People opposed the motion, arguing such evidence was relevant to show motive.  In support of their opposition, the People submitted a copy of a report prepared by their computer forensic examiner, indicating "numerous data items related to racist information against African Americans," and "information regarding White Supremacist and Nazi's" were found on the computer along with "strong evidence that [defendant] was the user of the computer when racist sites were visited."

The trial court ruled that "even though it is somewhat inflammatory in nature," some of the evidence found on the computer "is relevant and admissible" to show motive.  Specifically, the court ruled "evidence that indicates a racial animosity towards African Americans . . . would be relevant and would be admissible."  It also concluded articles detailing crimes perpetrated by African–Americans on Whites "is relevant for the same reasons" and "is more probative than prejudicial."  The court ruled "evidence that references the Nazis or Hitler" would be excluded under Evidence Code section 352 because it "is so emotional, so highly inflammatory . . . ."

At trial, the People's forensic examiner testified the computer seized from defendant's home was used hundreds of times between 2007 and November 2009 to visit racist Web sites and view news reports

16

of African–Americans committing crimes against Whites.   He specifically identified three such Web sites (<http://www.arthurshall.com>; <http://www.tightrope.cc>; <http://www.newnation.org>), and provided the jury with examples of the materials found on those Web sites, as well as samples of documents found on the seized computer.  In addition, he testified the racist Web sites were accessed by someone associated with defendant's user account and e-mail address.

On appeal, defendant concedes "admission of some racist evidence may have been relevant to the question of motive," but asserts such evidence nevertheless should have been excluded under Evidence Code section 352 because it is highly prejudicial.

"Evidence Code section 352 permits a trial court in its discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice.   We review a trial court's decision whether to exclude evidence pursuant to Evidence Code section 352 for abuse of discretion.  [Citation.]  For this purpose, '"prejudicial" means uniquely inflammatory without regard to relevance.' [Citation.]  'Evidence is substantially more prejudicial than probative [citation] if . . . it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome" [citation].' [Citation.]"   (*People v. Lindberg* (2008) 45 Cal.4th 1, 49 (*Lindberg*).)  "Evidence is not unduly prejudicial 'merely because it strongly implicates a defendant and casts him or her in a bad light.'"  (*Id.* at p. 50)

Evidence defendant subscribed to White supremacist beliefs or otherwise had disdain for African–Americans was relevant in determining his motive and intent in committing the murder, and thus, was directly relevant to the jury's determination of the murder charge.  (*Lindberg, supra*, 45 Cal.4th at pp. 46, 50.)  We do not view as unduly prejudicial evidence defendant viewed racist information against African–Americans. Defendant argues that even if the challenged evidence is not unduly prejudicial, the amount of evidence admitted was excessive.  Defendant forfeited this claim by failing to raise it below.  (Evid.Code, § 353, subd. (a); *People v. Holford* (2012) 203 Cal.App.4th 155, 168–170.)  Even if the issue had been preserved for review, it fails on the merits.  As noted above, the trial court excluded evidence referencing "Nazis" or "Hitler."  Moreover, the forensic examiner focused his testimony on three Web sites, and examples of materials available on those sites, and his testimony on direct, including that concerning his background and qualifications as an expert and analysis of defendant's and Robinson's cellular telephones, comprises only 59 pages of the reporter's transcript.

The trial court did not abuse its discretion in admitting the challenged evidence.

*Smith*, 2013 WL 5934315, at *6-8.

/////

17

1    Respondent argues that the Court of Appeal's conclusion that petitioner forfeited this

2    claim by failing to object to the admission of "excessive" evidence regarding racist websites

3    constitutes a state procedural bar which precludes this court from addressing the merits of this

4    claim.  ECF No. 15 at 24-25.  As a general rule, "[a] federal habeas court will not review a claim

5    rejected by a state court 'if the decision of [the state] court rests on a state law ground that is

6    independent of the federal question and adequate to support the judgment.'" *Walker v. Martin*,

7    562 U.S. 307, 314 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53 (2009).  However, a reviewing

8    court need not invariably resolve the question of procedural default prior to ruling on the merits

9    of a claim.  *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *see also Franklin v. Johnson*,

10   290 F.3d 1223, 1232 (9th Cir. 2002): ("Procedural bar issues are not infrequently more complex

11   than the merits issues presented by the appeal, so it may well make sense in some instances to

12   proceed to the merits if the result will be the same"); *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir.

13   2004) (noting that although the question of procedural default should ordinarily be considered

14   first, a reviewing court need not do so invariably, especially when the issue turns on difficult

15   questions of state law).  Where deciding the merits of a claim proves to be less complicated and

16   less time-consuming than adjudicating the issue of procedural default, a court may exercise

17   discretion in its management of the case to reject the claim on the merits and forgo an analysis of

18   procedural default.  *See Franklin*, 290 F.3d at 1232 (citing *Lambrix*, 520 U.S. at 525).  This court

19   concludes that petitioner's claim based on the improper admission of evidence can be resolved

20   more easily by addressing it on the merits.  Accordingly, the court will assume that the claim is

21   not defaulted.

22        In federal court, a writ of habeas corpus will be granted for an erroneous admission of

23   evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the

24   adversary system will not be competent to uncover, recognize, and take due account of its

25   shortcomings.'" *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002) (quoting *Barefoot v.*

26   *Estelle*, 463 U.S. 880, 899 (1983), *overruled on other grounds by Slack v. McDaniel*, 529 U.S.

27   473 (2000)).  Evidence violates due process only if "there are no permissible inferences the jury

28   may draw from the evidence." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

1   Evidence must "be of such quality as necessarily prevents a fair trial." *Id.* (quoting

2   *Kealohapauole v. Shimoda*, 800 F.2d 1463 (9th Cir. 1986)).

3              Even so, as the Ninth Circuit has observed:

4              The Supreme Court has made very few rulings regarding the
              admission of evidence as a violation of due process. Although the
5              Court has been clear that a writ should be issued when
              constitutional errors have rendered the trial fundamentally unfair
6              (citation omitted), it has not yet made a clear ruling that admission
              of irrelevant or overtly prejudicial evidence constitutes a due
7              process violation sufficient to warrant issuance of the writ

8   *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Therefore, "under AEDPA, even

9   clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit

10  the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as

11  laid out by the Supreme Court." *Id. See also Greel v. Martel*, No. 10-16847, 472 F. App'x. 503,

12  504, 2012 WL 907215, *1 (9th Cir. Mar. 19, 2012) ("There is likewise no clearly established

13  federal law that admitting prejudicial evidence violates due process.").

14          In light of these authorities, the state courts' rejection of petitioner's claim that the trial

15  court violated his right to due process in allowing evidence that petitioner's computer was used to

16  access racist websites does not support habeas relief under AEDPA. There is no "clearly

17  established federal law" that the admission of this type of evidence to show motive in a racially

18  charged case violates the due process clause.

19          In any event, the admission of this evidence did not render petitioner's trial fundamentally

20  unfair. Although the testimony was damaging to the defense, it was not unreliable and, as

21  petitioner conceded in state court, at least some of this evidence was relevant to determine a

22  possible motive for the shooting. Further, in order to avoid undue prejudice, the trial court

23  excluded the most inflammatory evidence and admitted only the less inflammatory portion to

24  show possible evidence of motive. Under these circumstances, the admission of evidence

25  regarding racist websites to provide evidence of a possible motive, when motive was a contested

26  issue, did not violate petitioner's right to due process.

27  /////

28  /////

1      Nor is petitioner entitled to relief on his claim that his trial and appellate counsel rendered

2   ineffective assistance in failing to object to the admission of this evidence on federal grounds at

3   trial or on direct appeal.

4      The clearly established federal law governing ineffective assistance of counsel claims is

5   that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  To

6   succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was

7   deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687.  Prejudice is

8   found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

9   result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is "a

10  probability sufficient to undermine confidence in the outcome." *Id.*  "The likelihood of a

11  different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792.

12     The *Strickland* standards apply to appellate counsel as well as trial counsel.  *Smith v.*

13  *Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).

14  However, an indigent defendant "does not have a constitutional right to compel appointed counsel

15  to press nonfrivolous points requested by the client, if counsel, as a matter of professional

16  judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

17  Counsel "must be allowed to decide what issues are to be pressed." *Id.*  Otherwise, the ability of

18  counsel to present the client's case in accord with counsel's professional evaluation would be

19  "seriously undermined." *Id.  See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998)

20  (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even

21  particularly good appellate advocacy.")  There is, of course, no obligation to raise meritless

22  arguments on a client's behalf.  *See Strickland*, 466 U.S. at 687-88 (requiring a showing of

23  deficient performance as well as prejudice).  Thus, appellate counsel is not deficient for failing to

24  raise a weak issue.  *See Miller*, 882 F.2d at 1434.  In order to establish prejudice in this context,

25  petitioner must demonstrate that, but for appellate counsel's errors, he probably would have

26  prevailed on appeal.  *Id.* at 1434 n.9.

27     This court has concluded that the trial court's admission of evidence that petitioner's

28  computer was used to access racist websites did not violate the federal constitution.  Accordingly,

1    petitioner cannot demonstrate prejudice with respect to this claim, or that the result of the

2    proceedings would have been different if trial and appellate counsel had raised a federal due

3    process claim on this basis in the trial and appellate courts.  *See Jones v. Smith*, 231 F.3d 1227,

4    1239 n.8 (9th Cir. 2000) (an attorney's failure to make a meritless objection or motion does not

5    constitute ineffective assistance of counsel); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996)

6    ("the failure to take a futile action can never be deficient performance").  Accordingly, petitioner

7    is not entitled to habeas relief on his claims of ineffective assistance of trial and appellate counsel.

8            **C.  Exclusion of Evidence of Statements by Robinson's Daughter**

9            In his next ground for relief, petitioner claims that the trial court violated his right to due

10   process and to present a defense when it excluded evidence that Robinson's then four-year-old

11   daughter told a police officer at the scene that Robinson said "bad words" to petitioner before the

12   shooting.  ECF No. 1 at 26.  At trial, petitioner argued the daughter's prior statement was

13   admissible hearsay because it contradicted her trial testimony that she couldn't remember whether

14   her father said anything to petitioner at the time of the shooting.  In his claim before this court,

15   petitioner argues:

16              The victim's daughter, age six at the time of her testimony, no
                doubt came to realize (or was told) that her father's use of "bad
17              words" just before the shooting would be seen as evidence in
                support of the defendant's claim of self-defense.  Use of her prior
18              statement as substantive evidence in these circumstances should
                have been permitted, and the exclusion of the prior statement was a
19              denial of Due Process.

20   ECF No. 16 at 4.

21           The California Court of Appeal denied this claim, reasoning as follows:

22              **The Trial Court Properly Excluded Robinson's Daughter's**
                **Hearsay Statement**
23

24              Defendant also claims the trial court abused its discretion in
                excluding evidence Robinson's four-year-old daughter told police
                Robinson said "bad words" to defendant before defendant shot him.
25              He argues the out-of-court statement was admissible as a prior
                inconsistent statement.  (Evid.Code, § 1235.)  We disagree.
26

27              At trial, Robinson's daughter, who was six years old at the time of
                trial, testified she recalled the day her father "got hurt."  She was
                walking to school with Robinson and her two younger sisters.
28              While they were walking, she saw a man in a truck.  The man in the

truck stopped and then drove away.  Robinson followed the man in the truck, while she remained on the sidewalk playing with her baby sister.  Shortly thereafter, she heard a shot.  The next time she saw Robinson, he was at her grandparents' house down the street.

Robinson's daughter did not remember the color of the truck, whether a trailer was attached to it, or whether there was anyone other than the driver inside.  She also did not recall if the man in the truck or Robinson made any hand gestures or if Robinson said anything to the man in the truck.   In particular, on direct examination, she told the prosecutor she did not remember if the man in the truck had "some words with your dad" or if "your dad sa[id] anything to him."

On cross-examination, defendant's trial counsel asked her, "Can you remember now that you heard your dad said bad words?"  She responded, "No."

Later, defense counsel sought to impeach Robinson's daughter with her prior statement to Officer Michelle Tate on the day of the shooting that Robinson said "bad words" to the man in the truck prior to being shot.  The trial court ruled defendant would not be permitted to impeach Robinson's daughter with her prior statement because she merely failed to remember whether Robinson had used bad words.

"'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."  (Evid.Code, § 1200, subd. (a).)    "Except as provided by law, hearsay evidence is inadmissible."  (*Id.*, subd. (b).)  "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his [or her] testimony at the hearing and is offered in compliance with Section 770."  (Evid.Code, § 1235.)  "'"The 'fundamental requirement' of section 1235 is that the statement in fact be inconsistent with the witness's trial testimony." [Citation.]   '"Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness'[s] prior statement . . . .'" [Citation.]' [Citation.]  Thus, for example, '"[w]hen a witness's claim of lack of memory amounts to deliberate evasion, inconsistency is implied. [Citation.]  As long as there is a reasonable basis in the record for concluding that the witness's 'I don't remember' statements are evasive and untruthful, admission of his or her prior statements is proper.  [Citation.]'" [Citation.]"  (*People v. Homick* (2012) 55 Cal.4th 816, 859 (*Homick*), fn. omitted.)  We review the trial court's rulings on the admission of evidence for abuse of discretion. (*Ibid.*)

Defendant sought to introduce Robinson's daughter's out-of-court statement for the truth of the matter asserted, i.e. that Robinson said "bad words" to defendant before defendant shot him.  Accordingly, the statement constituted hearsay (Evid.Code, § 1200, subd. (a)), and as such, was admissible as a prior inconsistent statement only if there was a reasonable basis in the record for concluding Robinson's daughter's testimony at trial that she did not remember

whether her father said "bad words" to the man in the truck was ""evasive and untruthful.""" (*Homick, supra*, 55 Cal.4th at p. 859.)

At trial, Robinson's daughter, who was six years old, was questioned about a traumatic event that occurred when she was four years old. Thus, it is hardly surprising that there were things about the event she could not remember. In addition to not remembering if Robinson said "bad words" to defendant, a detail that supported the defense, she also did not remember details that would have benefited the prosecution. For example, she could not recall whether defendant said bad words to Robinson, whether either man used any hand gestures, whether the men appeared mad at one another, or any details concerning Robinson's injuries other than he was hurt. There is nothing about her testimony that suggests she was being evasive or untruthful when she said she could not remember if Robinson said "bad words" to defendant prior to being shot. Accordingly, the trial court did not abuse its discretion in excluding her out-of-court statement to Officer Tate.

*Smith*, 2013 WL 5934115, at *8-9.

The conclusion of the state appellate court that Robinson's daughter's statement to police was inadmissible under California law is binding on this court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). State law rules excluding evidence from criminal trials do not abridge a criminal defendant's right to present a defense unless they are "arbitrary" or "disproportionate to the purposes they were designed to serve" and "infringe[s] upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). *See also Crane v. Kentucky*, 476 U.S. 683, 689-91 (1986) (discussion of the tension between the discretion of state courts to exclude evidence at trial and the federal constitutional right to "present a complete defense"); *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002). Further, a criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). In general, it has taken "unusually compelling circumstances ... to outweigh the strong state interest in administration of its trials." *Perry v. Rushen*, 713 F.2d 1447, 1452 (9th Cir. 1983). "A habeas petitioner bears a heavy burden

/////

23

1   in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d

2   1159, 1172 (9th Cir. 2005).

3         Petitioner has failed to meet his heavy burden to show a due process violation based on

4   the trial court's evidentiary decision to exclude evidence of the statement made by Robinson's

5   daughter.  The California rule of evidence defining the hearsay exception for admission of prior

6   inconsistent statements is not arbitrary or disproportionate to the purposes it was designed to

7   serve, nor does it unduly infringe on any of petitioner's constitutional rights.  The court notes that

8   defendant's son testified that Robinson yelled "bad words" to defendant at the scene of the

9   shooting.  Reporter's Transcript on Appeal (RT) at 268.  Given this testimony, the exclusion of a

10   similar statement by the Robinson's daughter would not have had a significant impact on the

11   verdict in this case.  In short, petitioner has failed to show that the trial court's ruling rendered his

12   trial fundamentally unfair.  Accordingly, he is not entitled to habeas relief on this claim.

13       **D.  Prosecutorial Misconduct**

14         In his final ground for relief, petitioner claims that the prosecutor violated his right to due

15   process in introducing evidence in his case-in-chief that petitioner possessed numerous firearms,

16   in violation of a previous in limine ruling by the trial court.  He also claims that his trial counsel

17   rendered ineffective assistance in failing to object to the admission of this evidence.  ECF No. 1 at

18   27.

19         The California Court of Appeal found that the prosecutor committed misconduct in

20   introducing evidence of the firearms but that petitioner did not suffer prejudice from the error.

21   The court reasoned as follows:

22             **Defendant Forfeited His Challenge to the Prosecutor's**
          **Introduction of Evidence Related to Defendant's Gun**

23             **Collection, and in Any Event, He Was Not Prejudiced Thereby**

24             Finally, defendant contends the prosecutor erred by introducing
          evidence defendant possessed numerous rifles and shotguns in

25             violation of the trial court's in limine ruling.  We agree the
          prosecutor erred, but find defendant forfeited his challenge by

26             failing to object below, and in any case, he was not prejudiced by
          the error.

27

28             Prior to trial, defendant moved in limine for an order "exclud[ing]
          evidence of weapons and ammunition found during the search [of

his home] subsequent to the shooting" as irrelevant because the gun he used to shoot Robinson and the bullet that struck Robinson had been accounted for.   The People responded that "[t]he 53 guns seized during a search of the defendant's house are relevant to refute his likely claim of self-defense."   According to the People, "if [Robinson] did in fact have a gun, the defendant should have been able to provide some type of description to the police" given his "extensive collection of guns and his own self-proclaimed expertise of guns."   The trial court granted defendant's motion to exclude evidence of the weapons seized from defendant's home, with the exception of nine handguns and a considerable amount of ammunition.   The trial court also ruled evidence of defendant's "familiarity with firearms from [his] employment in [the] firearms business" was admissible because it did not "bear on his ownership" of firearms.

During the People's case-in-chief, the prosecutor introduced evidence nine handguns, the majority of which were semiautomatic, were seized from defendant's home.   The prosecutor also played the entire audio-video recording of defendant's interview with Detective Semeryuk, which included a discussion of defendant's gun collection.   Defendant initially told Semeryuk he had "a few" guns, but later acknowledged he "probably ha[d] thirty rifles[,] . . . three or four shotguns," and five or so semi-automatic handguns.   Defendant did not object when this portion of the interview was played at trial nor was there any request that the jury be admonished not to consider such evidence.

During the defense's case-in-chief, defendant's stepfather testified as to defendant's character for honesty and lack of racial prejudice.   On cross-examination, the prosecutor asked him if, on the day of the shooting, he directed his own wife and defendant's wife to remove numerous guns from defendant's home.   He acknowledged removing "[l]ots of guns," "probably more than could fit in [an] SUV" because he "didn't think it would look good [to the police] for [defendant] to have all the guns."

When defendant testified, the prosecutor cross-examined him about the accuracy of his statement to Detective Semeryuk that he possessed a "few" guns.   Defendant's trial counsel objected "based on [the court's] in limine ruling," and the court overruled the objection.   When the cross-examination resumed, defendant admitted he lied to Semeryuk and that he had "a lot more than" a few guns.   Thereafter, the prosecutor played the portion of defendant's interview with Semeryuk during which he said he "probably ha[d] thirty rifles [,] . . . three or four shotguns," and five or so semiautomatic handguns, and asked defendant, "Is that a more accurate statement about how many firearms you had?"   Defendant explained he had not meant to lie but "knew how bad it looks to have guns, people think you're a nut . . . ."

After defendant was convicted of Robinson's murder, he moved for a new trial, arguing, among other things, that the prosecutor violated the court's in limine ruling when he introduced evidence of defendant's extensive collection of rifles and shotguns during his

cross-examination of defendant.  The trial court denied the motion, explaining that its "in limine rulings barred the introduction of that evidence during the People's [case-in-chief], not during the defense case."  Thus, the court found "there was no violation of [the] court's order when [the prosecutor] cross-examined the defendant on that particular issue."  The court found the prosecutor had violated its order when he presented evidence of defendant's gun collection "through the videotaped interview with the defendant," but concluded defendant was not prejudiced by the error because "[t]he same information would have come in during the defense case, not only through the defendant, but through his [stepfather]."

On appeal, defendant contends the trial court erred in concluding he was not prejudiced by the prosecutor's error.  According to defendant, "[f]rom the evidence [he possessed many rifles and shotguns] the jury would readily—but improperly—infer that [he] had a propensity toward gun-related violence and thus did not act in self-defense."

To preserve a claim of prosecutorial error for appeal, the defense must make a timely objection at trial and request an admonition; otherwise, the point is reviewable only if an admonition would not have cured the harm caused by the error.  (*People v. Linton* (2013) 56 Cal.4th 1146, 1205.)

Here, defendant failed to object or request an admonition when the prosecutor introduced evidence defendant possessed numerous rifles and shotguns during the People's case-in-chief.  Defendant's pretrial motion in limine did not constitute a timely objection.  The motion was made well before the error occurred and before the court had a chance to cure any potential prejudice with an admonition.  Our Supreme Court requires a defendant to "timely" "ma[k]e an assignment of misconduct . . . ."  (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)  Had defendant's trial counsel done so, the trial court could have warned the prosecutor, consistent with its prior ruling, not to elicit evidence of defendant's collection of rifles and shotguns.  Because such a warning could have prevented or mitigated the prosecutor's error, it is evident that an objection would not necessarily have been futile.  As a result, defendant was not excused from his legal obligation to object to the error, and thus, has forfeited any claim of prosecutorial error.

Even assuming the claim is reviewable on appeal, reversal is not required.  A defendant's conviction will not be reversed for prosecutorial error that violates state law "'unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct.'"  (*People v. Wallace* (2008) 44 Cal.4th 1032, 1071.)  As the trial court correctly found, defendant was not prejudiced by the prosecutor's error because the jury would have learned defendant possessed a large number of firearms and ammunition in any event.  Defendant's stepfather was properly cross-examined concerning his efforts to conceal defendant's firearms from police.  (Evid.Code, § 785.)  He acknowledged removing "probably more [guns] than could fit in [an] SUV" from defendant's home following the shooting because

he "didn't think it would look good [to the police] for [defendant] to have all the guns."   Defendant does not contend otherwise. Moreover, defendant does not challenge the admission of evidence concerning the nine handguns and considerable amount of ammunition seized from defendant's home.

Because the jury would have learned defendant likely possessed "more [guns] than could fit in [an] SUV," including nine handguns, seven of which were semiautomatic, absent the prosecutor's error, defendant cannot establish he was prejudiced by the introduction of evidence that his collection also included 30 rifles and 3 or 4 shotguns.[8]   In other words, given the evidence that was properly admitted, it is not reasonably probable the jury would have found defendant acted in self-defense had it not learned his extensive gun collection also included 30 rifles and 3 or 4 shotguns.  Accordingly, the trial court properly declined to grant defendant a new trial based on the prosecutor's error in introducing such evidence.

*Smith*, 2013 WL 5934315, at *9-11.

Respondent argues that the California Court of Appeal's conclusion that petitioner forfeited his challenge to the prosecutor's misconduct constitutes a state procedural bar which precludes this court from addressing the merits of this claim.  ECF No. 15 at 34.  Petitioner argues that his pretrial motion in limine constituted a sufficient objection to overcome a procedural default.  ECF No. 16 at 5-6.  Under the circumstances presented here, the court finds that petitioner's claim can be resolved more easily by addressing it on the merits.  Accordingly, the court will assume that the claim is not defaulted.  *Lambrix*, 520 U.S. at 524-25; *Franklin*, 290 F.3d at 1232; *Busby*, 359 F.3d at 720.

A criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).  *See also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v.*

---

[8]   Although a witness's admission of untruthfulness is relevant to determining credibility (Evid.Code, §§ 780, subd. (k); 785), we need not determine whether the prosecutor also erred by introducing evidence defendant possessed 30 rifles and 3 or 4 shotguns during his cross-examination of defendant.  Even assuming it was error, as defendant argued below, based on our analysis set forth above, defendant was not prejudiced thereby

Case 2:15-cv-00151-MCE-EFB   Document 18   Filed 12/21/16   Page 28 of 29

1   *DeChristoforo*, 416 U.S. 637, 643 (1974); *Towery v. Schriro*, 641 F.3d 300, 306 (9th Cir. 2010).

2   Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial

3   misconduct resulted in actual prejudice. *Darden*, 477 U.S. at 181-83. *See also Towery*, 641 F.3d

4   at 307 ("When a state court has found a constitutional error to be harmless beyond a reasonable

5   doubt, a federal court may not grant habeas relief unless the state court's determination is

6   objectively unreasonable"). Prosecutorial misconduct violates due process when it has a

7   substantial and injurious effect or influence in determining the jury's verdict. *See Ortiz-Sandoval

8   v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

9       The state court's conclusion that any prosecutorial misconduct in introducing evidence of

10  petitioner's gun collection in his case-in-chief was harmless is not objectively unreasonable and

11  should not be set aside. For the reasons expressed by the California Court of Appeal, evidence

12  that petitioner had a significant gun collection would have come before the jury even if the

13  prosecutor hadn't improperly introduced that evidence in his case-in-chief. Accordingly, the

14  prosecutor's error would not have had a substantial and injurious effect or influence on the jury's

15  verdict.

16      Nor is petitioner entitled to federal habeas relief on his claim that his trial counsel

17  rendered ineffective assistance in failing to object to the admission of the gun evidence at the time

18  that the prosecutor introduced it in his case-in-chief. Even if he had raised a successful objection,

19  the evidence would have come in later during the cross-examination of petitioner's stepfather.

20  Accordingly, petitioner is unable to establish prejudice with respect to this claim, or that the

21  results of the trial would have been different.

22  **IV. Conclusion**

23      For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

24  application for a writ of habeas corpus be denied.

25      These findings and recommendations are submitted to the United States District Judge

26  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

27  after being served with these findings and recommendations, any party may file written

28  objections with the court and serve a copy on all parties. Such a document should be captioned

1   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2   shall be served and filed within fourteen days after service of the objections.  Failure to file

3   objections within the specified time may waive the right to appeal the District Court's order.

4   *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

5   1991).  In his objections petitioner may address whether a certificate of appealability should issue

6   in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section

7   2254 Cases (the district court must issue or deny a certificate of appealability when it enters a

8   final order adverse to the applicant).

9   DATED:  December 20, 2016.

10  EDMUND F. BRENNAN
    UNITED STATES MAGISTRATE JUDGE

29